Argued and submitted March 12, affirmed April 14, 1980

In the Matter of the Compensation of
WEBSTER,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(No. 77-2895, CA 15517)

609 P2d 430

Robert K. Udziela, Portland, argued the cause for petitioner. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Darrell E. Bewley, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Gillette, Presiding Judge, and Richardson and Roberts, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The sole issue in this Workers' Compensation case (on review) is the extent of the claimant's disability. Claimant contends that she is permanently and totally disabled. We disagree.

The claimant suffered a compensable injury on December 5, 1973, when she slipped at work and sprained her ankle. Claimant attempted to return to work once, about two weeks after the original injury, but had to leave because of the pain she was experiencing. She has not worked or sought any employment since. After receiving treatment for this injury she was found, in 1975, to be medically stationary and able to return to work, at least from a physical point of view. However, her symptoms did not diminish and she began experiencing emotional difficulties. It was recommended that she be evaluated by a psychiatrist. Since 1974, claimant has been under the care of a psychiatrist and unable to work.

At the time of the hearing, claimant was 33 years old. She has a twelfth grade education and spent approximately one year at Northwest Business College. She spent three and one half years as a secretary-receptionist and then worked for almost six years, until the time of her injury, as a clerk stenographer for Pacific Power and Light Company.

All of the psychiatrists who have examined claimant find her psychological condition related to her industrial injury. However, they disagree as to the extent of her impairment with only her treating doctor, Dr. Petroske, finding her totally disabled.

It is clear from the record that, since her injury, claimant has experienced considerable difficulty in coping with daily life. In general, she has become withdrawn and greatly dependent on others. Her social life has been restricted, she finds it difficult to care for her nine year old daughter, and she needs help to perform her household chores. Claimant complains

of constant pain in her back and elsewhere and suffers from headaches and an inability to sleep.[1] She is continually depressed and experiences attacks of anxiety which, on occasion, have required hospitalization. She takes a variety of medications to relieve her problems and sees her psychiatrist about every three weeks.

Initially, upon recommendation of the Board's disability prevention division, claimant was evaluated by Dr. Perkins, who diagnosed psycho-psychological disorder. She found claimant to be devastated by the injury and its after effects and unable to participate in many areas of daily life. Perkins found claimant to be functioning within the dull normal range of intelligence and found that she demonstrated somewhat poor reading and arithmetic skills. This, according to her, suggested that claimant might have difficulty in some office settings. She noted that at times claimant had felt uncomfortable and inadequate at her job. This lead Perkins to conclude that remaining ill and at home might provide secondary gains to the claimant. She recommended individual counseling and a return to work as soon as physically possible.

Dr. Petroske first saw claimant in June, 1974. It was his opinion that claimant's condition did not exist prior to her injury. His diagnosis was that of depressive neurosis with feelings of anxiety. He concluded that claimant's prognosis was guarded. At that time he felt that claimant's emotional problems prevented her from being gainfully employed. He, too, noted a certain amount of secondary gain involved in claimant's illness.

Although noting improvement at times, it has remained Dr. Petroske's opinion that claimant is unable to work because of her emotional condition. In his most

---

[1] While claimant's main problems are psychological, she does have physical problems as well. In January, 1978, she was hospitalized for arm, shoulder and back problems. This was found to be unrelated to her 1973 injury. Additionally, claimant suffers from obesity which has contributed to her back and leg problems.

recent report, dated July 17, 1978, he stated that claimant had once again become severly depressed, frequently psychotic in severity, and had withdrawn into her home.

Claimant was examined by three other psychiatrists for the purpose of this claim. All agreed on the basic diagnosis of depressive neurosis mixed with anxiety tension.

Dr. Quan first saw claimant in October, 1975. He felt that her depression was somewhat serious. He found her condition to be much the same upon re-examination in August, 1976. It was Quan's opinion that claimant's impairment was that of 40 percent of the whole person.

In June, 1977, claimant was examined by Dr. Colbach. He estimated her impairment to be within five to ten percent of the whole person. He concluded that her condition was stationary at that time and that it would be unrealistic to expect a great deal of improvement in the foreseeable future. It was his opinion that her mental state prevented her from returning to her former job and he noted secondary gains, in the avoidance of job stresses, in the persistence of her illness.

The other examining psychiatrist was Dr. Parvaresh. He examined claimant in February, 1977, and again in June, 1978. He, too, felt that her condition was stationary. He felt that claimant's lengthy period of treatment had increased her dependency and that nothing precluded her from returning to work. He found her psychiatric impairment to be not greater than 20 percent of the whole person.

At the second exam, Dr. Pavaresh found claimant to be considerably different. Although his diagnosis of neurotic depression remained the same, he felt that she was greatly improved from a clinical standpoint. He found her to be more animated and functioning better with less complaints and fewer objective symptoms.

[877]

On the basis of this evidence, the referee found claimant to be permanently and totally disabled, the Board reduced her award to 30 percent unscheduled permanent partial disability.

Upon de novo review, we agree with the Board and find that the medical evidence, taken as a whole, does not establish claimant's entitlement to permanent total disability. We concur in the Board's conclusion that, considering claimant's age, education and job experience, an award of 30 percent psychological disability adequately compensates her for any loss in earning capacity due to her psychological condition.

Affirmed.